**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3438
_____

UNITED STATES OF AMERICA,

v.

GERMAN SUAREZ-ARZON,
also known as Richard Herrera,
Appellant

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 2:15-cr-00022-001)
District Judge: Hon. Gerald J. Pappert

_____

Submitted Under Third Circuit LAR 34.1(a)
October 4, 2016

_____

Before: SHWARTZ, GREENBERG, and ROTH, Circuit Judges

(Filed: November 8, 2016)

_____

OPINION[*]

_____

SHWARTZ, Circuit Judge.

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

German Suarez-Arzon, a/k/a Richard Herrera ("Herrera"),[1] appeals the District Court's order denying his motion to suppress evidence seized from his house pursuant to a search warrant. Because the warrant was supported by probable cause, we will affirm.

I

The facts set forth herein are drawn from the probable cause affidavit filed by Officer Charles Myers, a police officer assigned to an FBI narcotics task force. Herrera first came to the attention of law enforcement when members of the task force arrested Fabio Rondon-Jose, a suspected drug dealer. At the time of his arrest, Rondon-Jose was carrying large boxes filled with blue glassine packets and clear Ziploc bags, which are "commonly used" to "packag[e] . . . heroin for street sale." App. 163. Rondon-Jose told officers that he was on his way to deliver the parcel to a man he knew as "Richard" at 2232 Tyson Street in Philadelphia.[2] App. 163.

The officers corroborated Rondon-Jose's statements through informant information and surveillance. A Confidential Informant ("CI") who had previously worked with the task force confirmed that "Richard" was Herrera, a convicted Philadelphia heroin dealer. The CI also identified two cars belonging to Herrera, which agents found parked near 2232 Tyson Street. During surveillance, law enforcement observed Herrera sitting in one of the vehicles. In addition, Herrera was observed entering and exiting an alleyway adjacent to 2232 Tyson Street.

---

[1] We will adopt the parties' practice of referring to Appellant as "Herrera."

[2] In the briefs and testimony, the property is referred to as 2232 Tyson Street and 2232 Tyson Avenue. The District Court referred exclusively to Tyson Street, and we will do the same.

2

On one occasion, Myers saw Herrera exiting the alleyway and walking with both of his hands in his pockets. Myers followed Herrera to the 2200 block of Glenview Street, and saw him meet two men and hand one of them a "large object" he had removed from his pocket. App. 163. The two men "ran to 2225 Glenview St[reet]" and entered the building. App. 163. Herrera then returned to the alleyway behind 2232 Tyson Street, and ran through the alley. Based on the information received from Rondon-Jose and the CI, as well as Herrera's behavior, Officer Myers concluded that "he [had] just observed [a] narcotics transaction." App. 163.

Shortly after Herrera met with the two men, another car arrived at 2225 Glenview Street. The passenger exited carrying objects similar to those Rondon-Jose possessed when he was arrested. Approximately two hours later, another vehicle arrived at 2225 Glenview Street. This vehicle was known to the task force officers from a separate heroin investigation. The confluence of events convinced Officer Myers that 2225 Glenview Street was a location where drugs were packaged for sale.

Later that day, law enforcement observed Herrera leave 2232 Tyson Street with another man. Noticing unmarked police cars, Herrera yelled something in Spanish, and the men then split up. Herrera was arrested.

Based on these facts, Officer Myers presented a search warrant application to a Philadelphia Court of Common Pleas Judge, who thereafter approved warrants to search both 2232 Tyson Street and 2225 Glenview Street. During the search of 2232 Tyson Street, officers found, among other things, heroin bundled for sale, drug paraphernalia matching the items carried by Rondon-Jose, and a firearm.

3

Herrera was indicted for possession with intent to distribute 100 grams or more of heroin in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2. Herrera filed a motion to suppress the evidence recovered from the search of his home. The District Court held an evidentiary hearing at which Officer Myers largely reaffirmed the facts stated in his affidavit, except that he acknowledged that he had been mistaken about Herrera shouting "get out of here" when he saw police. [3]

The District Court denied the motion to suppress, holding that the warrant was supported by probable cause. Thereafter, Herrera entered a conditional guilty plea, reserving his right to appeal the District Court's denial of his suppression motion. Herrera appeals, arguing that the warrant to search 2232 Tyson Street lacked probable cause.

---

[3] In the probable cause affidavit, Officer Myers stated that Herrera had "yelled to 'get out of here,'" App. 164, but he later testified that the affidavit was mistaken. He explained that he had been listening to events as they were unfolding while preparing the warrant, and had misheard the description of events. It is undisputed, however, that Herrera, upon seeing the unmarked cars, yelled something and motioned in a manner suggesting the other man should leave, and the pair split up. Even where "some factual averments in [an] affidavit are tainted, they do not vitiate a warrant which is otherwise validly issued upon probable cause reflected in the affidavit." United States v. Burton, 288 F.3d 91, 103 (3d Cir. 2002) (quoting United States v. Johnson, 690 F.2d 60, 63 (3d Cir. 1982)). Because the statement in the affidavit was substantially true and, as explained herein, a sufficient basis exists for a finding of probable cause regardless of the mistake, Officer Myers's misstatement does not defeat probable cause.

## II[4]

Probable cause is a "commonsense, practical question," which we analyze under a "totality-of-the-circumstances approach." Illinois v. Gates, 462 U.S. 213, 230 (1983). Our role is "to determine whether [the issuing judge] had a substantial basis for concluding that probable cause existed." United States v. Stearn, 597 F.3d 540, 554 (3d Cir. 2010) (internal quotation marks and citation omitted). This requires the issuing judge to "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238. Probable cause can be inferred from "the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide" evidence of his crime. United States v. Burton, 288 F.3d 91, 103 (3d Cir. 2002) (quoting United States v. Jones, 994 F.2d 1051, 1056 (3d Cir. 1993)). In a drug case, "we have recognized that it is a reasonable inference to conclude that drug dealers often store evidence of drug crimes in their residences" in circumstances where "(1) . . . the person suspected of drug dealing is actually a drug dealer; (2) . . . the place to be searched is possessed by, or the domicile of, the dealer; and (3) . . . the home contains contraband linking it to the dealer's drug activities." Id. at 104. The facts in the affidavit satisfy the Burton factors.

---

[4] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291. While "[w]e exercise plenary review over the District Court's evaluation of the [issuing judge's] probable cause determination," we "conduct only a deferential review of the initial probable cause determination made by the" issuing judge. United States v. Stearn, 597 F.3d 540, 554 (3d Cir. 2010).

First, Officer Myers's affidavit provides sufficient evidence to support the inference that Herrera was dealing drugs. More specifically, law enforcement learned from Rondon-Jose that he was to deliver drug paraphernalia to "Richard" at 2232 Tyson Street. App. 163. Officers corroborated this information through the statements of a reliable CI who said that "Richard" was in fact Richard Herrera, a known heroin dealer. App 163. The CI told law enforcement that Herrera had previously been arrested for heroin distribution and identified Herrera's cars. Law enforcement confirmed Herrera's prior arrest and saw Herrera in the driver's seat of one of the vehicles parked near 2232 Tyson Street. Thus, the CI's information concerning Herrera's drug dealing was corroborated, and Rondon-Jose's information was corroborated by the CI. This information provided a substantial basis for concluding that Herrera was involved in drug dealing. See Stearn, 597 F.3d at 556-58 (finding sufficient probable cause where informant identified drug behavior and defendant's cars).

The existence of probable cause to believe that Herrera was involved in drug dealing is further supported by law enforcement's surveillance. Officers saw Herrera leave his house and hand an object to another man who immediately ran to 2225 Glenview Street. The object looked similar to the parcel containing drug paraphernalia that Rondon-Jose possessed when he was arrested. Law enforcement also saw Herrera and another man attempt to flee upon seeing unmarked police cars. Cf. United States v. Whitner, 219 F.3d 289, 298-99 (3d Cir. 2000) (defendant's suspicious actions underscored a finding of probable cause). Officer Myers provided these facts in his affidavit and, based upon his training and experience, drew inferences from them that

6

Herrera and the others were involved in drug activity, which the issuing judge was entitled to consider in making the probable cause determination.[5] When viewed in its totality, see Gates, 462 U.S. at 241, this evidence provides a substantial basis to believe Herrera is a drug dealer.

As to the second Burton factor, Herrera does not dispute that 2232 Tyson Street was his domicile.

The third Burton factor, whether there was enough evidence to support the proposition that Herrera's "home contains contraband linking it to [his] drug . . . activities," Burton, 288 F.3d at 104, is also satisfied. While we cannot say that drug dealers always keep the tools of their trade at their homes, the affidavit here demonstrates a connection between Herrera's drug activities and his residence at 2232 Tyson Street. Rondon-Jose's statement that he was bringing drug paraphernalia to "Richard" at 2232 Tyson Street provides direct evidence of such a connection. App. 163. Moreover, law enforcement observed instances of suspicious behavior, including Herrera conducting

---

[5] Herrera argues that it was improper for Officer Myers's police experience to factor into the probable cause determination because the basis of his expertise was not detailed in the affidavit of probable cause. Although Officer Myers did not set forth his nearly two decades of work as a police officer or delineate his expertise in narcotics cases, his affidavit provided a sufficient basis for the issuing judge to rely on Myers's interpretation of the events he described. It states that he is a member of an FBI task force and demonstrates his familiarity with the drug trade by noting, for example, that the items found with Rondon-Jose were "commonly used in the packaging of heroin for street sale," App. 163, and that 2225 Glenview Street was a "table" operation, App. 164, which is a term drug dealers use to describe the location at which drugs are prepared for distribution. From this, we conclude that the issuing judge had sufficient information about Myers's experience to rely on his interpretation of the events in making the probable cause determination. See Stearn, 597 F.3d at 560 (noting that the conclusion of experienced officer may provide nexus between drug dealer's drug activities and his home.)

what appeared to be a drug transaction and immediately returning to 2232 Tyson Street. See Burton, 288 F.3d at 104 (noting that the "inference [of probable cause] is much stronger when the home is the first place a drug dealer proceeds following . . . a [drug] transaction"). At the same time, law enforcement observed the men with whom Herrera had met proceed directly to a location where drug packaging activity was believed to be occurring. Law enforcement also saw how some of these individuals reacted to seeing an unmarked police car: they ran to avoid detection. While Officer Myers did not actually observe drugs change hands or see every instance of Herrera entering and exiting 2232 Tyson Street, his knowledge and experience allowed him to draw inferences about the activities in which Herrera and others engaged and on which the issuing judge was entitled to rely in determining probable cause. See United States v. Myers, 308 F.3d 251, 255 (3d Cir. 2002) ("[O]fficers may well draw inferences and make deductions that might well elude an untrained person." (internal quotation marks, citation, and alterations omitted)).

Finally, the nexus between Herrera's drug activity and the location to be searched is strengthened by their physical proximity. In United States v. Hodge, we noted that the fact that the defendant's home was located in the same city as a drug deal "render[ed] his home a more likely repository of his drug-related paraphernalia." 246 F.3d 301, 307 (3d Cir. 2001). Here, 2232 Tyson Street was only a short walk from both the place at which Herrera appeared to engage in drug activities and the suspected location of the packaging operation.

Based on the statement that Herrera was involved in drug dealing, the evidence linking him to 2232 Tyson Street, the observations of law enforcement, the proximity between 2232 Tyson and ongoing drug activity, and the activities believed to be occurring at 2225 Glenview Street and Herrera's connection to it, the District Court did not err in concluding that the issuing judge had a substantial basis to find that there was probable cause to believe that evidence of drug dealing would be located at 2232 Tyson Street.

III

For the foregoing reasons, we will affirm the order of the District Court denying the motion to suppress.